# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
      **JUDGE**

## LETTER OPINION

April 8, 2009

Carla P. Maresca, Esq.
Deasey, Mahoney & Valentini, Ltd.
80 Tanner Street
Haddonfield, NJ 08033
*Attorneys for Plaintiffs*

Elizabeth F. Lorell
Schwartz, Simon, Edelstein, Celso & Kessler, LLP
44 Whippany Road, Suite 210
P.O. Box 2355
Morristown, NJ 07962
*Attorneys for Defendants*

Sean R. Kelly
Saiber LLC
One Gateway Center, 13th Floor
Newark, NJ 07102-5311
*Attorneys for the Individual Defendants (as to Count I only)*

    Re:   *Maribel DelRio-Mocci, Linda Elliott, Robert Bolmer and Charlsey*
             *Sheppard v. Connolly Properties Inc., David M. Connolly, Dana Ayala, and*
             *Dania Molina*
             <u>Civil Action No. 08-2753 (WJM)</u>

Dear Counsel:

      This matter comes before the Court on a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Defendants David M. Connolly, Dana

1

Ayala, and Dania Molina (collectively "Defendants").  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons stated below, Defendants' Motion to Dismiss Count I of Plaintiffs' Second Amended Complaint ("SAC") is **GRANTED**.

## BACKGROUND

Defendants manage multiple rental apartment complexes in New Jersey and Pennsylvania (Pl.'s SAC ¶ 22; Dft.'s Br. 5).  Plaintiffs DelRio-Mocci, Elliott, Bolmer, and Sheppard ("Plaintiffs") are present or former tenants of various Plainfield, NJ buildings run by Defendants (Pl.'s SAC ¶¶ 14-17) .  Plaintiff Bolmer ("Plaintiff" or "Bolmer"), the sole plaintiff bringing Count I, has resided at Defendants' Pingry Arms building since February 2004, before the building was run by Defendants (Pl.'s SAC ¶ 16).  Plaintiffs allege that the manner in which Defendants operate their rental real estate business violates the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Federal Fair Housing Act ("FFHA"), the New Jersey Fair Housing Act ("NJFHA"), and the New Jersey Conscientious Employee Act ("NJCEA") (Pl.'s SAC ¶ 1).

Specifically, Plaintiffs allege that Defendants actively seek out illegal aliens as prospective tenants because their immigration status makes them easy to exploit.  (Pl.'s SAC ¶ 4).  The SAC asserts that Defendants believe illegal aliens are more inclined to accept sub-standard housing conditions, more willing to pay higher rents for apartments in disrepair, and less likely to report housing code violations to the authorities  (Pl.'s SAC ¶ 7).  As a result of renting to illegal aliens, Plaintiffs allege, Defendants are able to allow slum-like conditions to proliferate in their buildings without having to offer commensurate reductions in rent.[1]

Plaintiffs further allege that Defendants engage in discriminatory housing practices, segregating their apartment buildings according to impermissible criteria such as race, national origin, immigration status, and source of income.  (Pl.'s SAC ¶ 23).  The alleged purpose of this segregation is to prevent tenants of different racial and ethnic backgrounds from interacting with each other, which Defendants supposedly believe will lead to fighting between the groups and attract the attention of the authorities.  According to Plaintiffs, "by segregating illegal aliens and U.S. citizen tenant groups, [Defendants] decreased the risk of unwelcome investigations or enforcement-related visits to [the] properties by immigration agents, police officers, housing inspectors, or social agency personnel," which could lead to the discovery of the illegal alien tenants (Pl's SAC ¶ 30).

---

[1] Among the slum-like conditions that Plaintiffs allege are broken locks, doors, windows, and plumbing, vermin infestations, and the use of common areas to conduct illegal activity.

2

Plaintiffs filed this suit in June 2008 seeking actual, compensatory, and punitive damages for FFHA, NJFHA, and NJCEA violations, treble damages for RICO violations, an injunction against Defendants from perpetrating further racketeering activity, equitable relief to remove the effects of existing housing discrimination and prevent it in the future, and attorney's fees and costs. Plaintiffs amended their complaint twice, filing the SAC in December 2008.

On December 22, 2008, Defendants filed this Motion to Dismiss Count I of Plaintiffs' SAC, the count alleging a RICO violation, pursuant to Fed. R. Civ. P. 12(b)(6). In short, Defendants allege that Count I of the SAC does not state a RICO violation and therefore fails to state a claim for which relief can be granted. Plaintiff Bolmer opposed Defendants' motion. Additionally, various public interest groups moved for leave to file and filed an amicus brief supporting the contention that Plaintiff failed to state a RICO violation. The motion was fully briefed on January 28, 2009.

## ANALYSIS

**A. Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may take into account only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Although a complaint does not need to contain detailed factual allegations, "the 'grounds' of [the plaintiff's] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id*. at 1964-65. Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F. 3d 187, 211 (3d Cir. 2007).

**B.  RICO Conspiracy Claim**

The RICO statute provides, in pertinent part, that it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Conspiring to violate the above provision is also prohibited.  18 U.S.C. § 1962(d). The statute defines a pattern of racketeering activity as committing two or more acts in violation of an enumerated list of federal and state laws.  A violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324, constitutes a predicate act of racketeering activity.  18 U.S.C. § 1961(1)(F) (incorporating § 274 of the INA).

Count I of the SAC alleges that Defendants have violated RICO's conspiracy provision.  Specifically, the Count states that Defendants have entered into a conspiracy to engage in an "Illegal Alien Rental Scheme" ("the Scheme"), renting apartments to illegal aliens under the theory that such individuals are more likely to over-pay for sub-standard housing and less likely to report housing code violations to the authorities (Pl.'s SAC ¶ 41).  The alleged result of this activity has been to deny Plaintiff and other "lawful tenants" of "the full value of their leasehold" because it enables Defendants to keep the buildings in poor condition without reducing rents (Pl.'s SAC ¶ 7).

Plaintiff Bolmer asserts that the members of the Scheme have conducted their business by "knowingly harboring numerous illegal aliens in [Defendants' buildings] as well as encouraging and inducing those illegal aliens to reside within [the buildings], in the last four years alone," in violation of the INA (Pl.'s SAC ¶ 4).  The harboring, encouraging, and inducing conduct is meant to represent a "pattern of racketeering" within the meaning of RICO.  Plaintiff also alleges that Defendants Connolly Properties, Ayala, and Molina are "persons" pursuant to RICO, Connolly Properties constitutes a RICO enterprise, the harm to Plaintiff is cognizable under RICO, and it was proximately caused by Defendants (Pl.'s SAC ¶¶ 34, 75-76) .

The crux of Plaintiff's argument is that renting apartments to illegal aliens constitutes racketeering activity because it constitutes harboring, encouraging, or inducing an illegal alien in violation of the INA.  However, no court in this circuit or in any other has ever found this to be the case– without more, renting an apartment to an alien does not amount to harboring, encouraging, or inducing.  Thus Plaintiff has not alleged a pattern of racketeering activity and the RICO claim cannot survive a motion to dismiss.

To violate the INA's prohibition on harboring an illegal alien, it must be shown that a person "knows or recklessly disregards the fact that an alien is illegally in this

4

country... and conceals, harbors, or shields, or attempts to conceal, harbor, or shield, the alien from detection." *See* 8 U.S.C. § 1324(a)(1)(A)(iii). A recent Third Circuit case held that to sustain a conviction under this section, the conduct at issue must (1) tend "substantially to facilitate an alien's remaining in the United States," and (2) "prevent government authorities from detecting" the alien's unlawful presence. *U.S. v. Silveus*, 542 F.3d 993, 1003 (3d Cir. 2008). The second element is critical. *Id*. No court has ever held that the mere provision of housing to an illegal alien constitutes harboring, because the second element is lacking. *See id*. at 1004 (finding that Defendant's conduct, allowing an individual whom she knew was in the U.S. illegally to live with her in her apartment, did not constitute harboring); see also *Zavala v. Wal-Mart Stores*, 393 F. Supp. 2d 295, 307 (D.N.J. 2005) (a "contractor's 'lodging' of an undocumented worked and 'putting him to work' falls far short of alleging that Wal-Mart sheltered illegal aliens for the purposes of concealing them and avoiding their detection by immigration authorities").

Moreover, the caselaw indicates that for conduct to satisfy the second element of the test, it must be affirmative and material. *See U.S. v. Ozcelik,* 527 F.3d 88, 99 (3d Cir. 2008 (advising an illegal alien to "lay low and to stay away from the address on file with the INS" did not constitute preventing the authorities from detecting an alien's unlawful presence because the advice was "obvious information that any fugitive would know"). *But see U.S. v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008) (hiring undocumented aliens, finding them apartments, paying for their rent and utilities, providing them with transportation to and from their jobs to avoid their detection, and maintaining counterfeit immigration documents for them did constitute harboring).

Here, Plaintiff has not alleged facts sufficient to support the predicate act of harboring. Defendants rented the apartments to illegal aliens with the purpose of making a profit. This is easily distinguished from situations in which parties employ undocumented workers and then provide them with housing, free of charge or tied to their wages, in order to conceal their presence from the authorities. Defendants did not take any affirmative or material steps to prevent the authorities from learning about the existence of their illegal immigrant tenants. Plaintiff's claim that Defendants' practice of segregating the illegal aliens from the other tenants was done to prevent their detection from the authorities is not persuasive. Moreover, this behavior falls far short of the conduct that the caselaw recognizes as affirmative and material steps to conceal their presence from the authorities.

Similarly, Defendants' behavior also fails to rise to the level of "encouraging" or "inducing" in violation of the INA. The District of New Jersey has found that the sale of counterfeit identity or immigration documents can constitute unlawful encouraging or inducing but that providing housing does not. *Zavala,* 393 F. Supp. 2d at 308.

Thus, Plaintiff has failed to allege a pattern of racketeering activity. Without such, there can be no RICO violation and no RICO conspiracy violation. Plaintiff has failed to state a claim for which relief can be granted, and consequently Count I cannot survive a motion to dismiss.[2]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the SAC is **GRANTED.** An appropriate order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

---

[2] Defendants' Motion to Dismiss argues that Plaintiff's RICO count suffers from other infirmities beyond its failure to identify a pattern of racketeering activity. Specifically, Defendants claim that Plaintiff does not have standing to bring a RICO claim because Bolmer, as a tenant of the apartment and not an owner, he did not suffer injury to his business or property as required. Further, Defendants maintain that Bolmer has not demonstrated that Defendants were the proximate cause of its injuries. However, there is no need for the Court to address these deficiencies at length because in the absence of a pattern of racketeering activity, the Count cannot withstand a motion to dismiss.

6